## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SINCERI GUERRERO**<br>P.O. Box 964<br>Alexandria, Virginia 22313<br>Ph: (202) 905-8833<br>　　**Plaintiff** | )<br>)<br>)<br>)<br>)<br>) | 1:14-CV2107<br>**CIVIL CASE NO.** _____ |
| | ) | |
| 　　**v.** | )<br>) | |
| | ) | |
| **THOMAS VILSACK, Secretary**<br>**United States Department of Agriculture**<br>**Office of the Secretary**<br>**Jamie L. Whitten Building**<br>**Washington DC 20250** | )<br>)<br>)<br>)<br>) | **COMPLAINT** |
| | ) | |
| **ALFRED ALMANZA AKA AL ALMANZA,**<br>**Administrator**<br>**& Co Deputy Under Secretary,**<br>**United States Department of Agriculture,**<br>**Food Safety and Inspection Service**<br>**331- E Jamie L. Whitten Building**<br>**Washington DC 20250**<br>Ph: 202 720-7025 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **DEMAND ENDORSED HEREON** |
| | ) | |
| **CARMEN ROTTENBERG, Chief of Staff**<br>**United States Department of Agriculture**<br>**Food Safety and Inspection Service**<br>**331- E Jamie L. Whitten Building**<br>**Washington DC 20250**<br>Ph: 202 720-6618 | )<br>)<br>)<br>)<br>)<br>) | |
| | ) | |
| **JACQUELINE MYERS, Assistant Administrator**<br>**United States Department of Agriculture**<br>**Food Safety and Inspection Service**<br>**347-E Jamie L. Whitten Building**<br>**Washington DC 20250**<br>Ph: (202) 720-4425 | )<br>)<br>)<br>)<br>)<br>) | |
| | ) | |
| **PETER BRIDGEMAN, Special Assistant**<br>**United States Department of Agriculture**<br>**Food Safety and Inspection Service**<br>**347-E Jamie L. Whitten Building**<br>**Washington DC 20250**<br>　　**Defendants** | )<br>)<br>)<br>)<br>)<br>) | |

## EMPLOYMENT DISCRIMINATION COMPLAINT

### I.       INTRODUCTION

This is an action for compensatory and injunctive relief under 42 U.S.C. §2000e-5(g) and 2000e-16, and for declaratory relief under 28 U.S.C. § 2201 based on the discriminatory employment practices of the United States Department of Agriculture (USDA), Food Safety Inspection Service toward Plaintiff, Sinceri Guerrero, a current USDA Food Safety and Inspection Service employee.

### II.       TITLE VII VIOLATION

#### A.       PARTIES

1.       Plaintiff, Sinceri Guerrero, is a 52 year old Hispanic and African American female citizen of the United States, resident of the State of Virginia, and works in the District of Columbia.

2.       Defendants are **Tom Vilsack** Secretary of the United States Department of Agriculture;

3.       **Alfred Almanza**, is Administrator and Co-Deputy Under Secretary for Food Safety and Inspection Service; the head of the Agency which regularly conducts business in Washington, D.C. and, at all relevant times, employed Plaintiff;

4.       **Carmen Rottenberg** Chief of Staff to Alfred Almanza and current acting Administrator under Al Almanza for Food Safety and Inspection Service and Plaintiff's former supervisor;

5.       **Jacqueline Myers**, Assistant Administrator, Food Safety and Inspection Service Agency and Plaintiff's former supervisor;

6.   Peter Bridgeman, Special Assistant, Food Safety and Inspection Service Agency and Plaintiff's former supervisor.

## B.   JURISDICTION

7.   This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, for employment discrimination. Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000e (5) g and § 2000e-16, which prohibits discrimination in federal employment on the basis of race and age and discrimination in pay in violation of the Fair Pay Act. Jurisdiction is also based on 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § § 1981 et seq.

8.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f) (3).

## C.   ADMINISTRATIVE PREREQUISITES

9.   Pursuant to 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(a)-(b) a Plaintiff may file a civil action in federal district court 180 days from the filing of the complaint with USDA if no final action has been taken by that time or within 90 days of receiving notice of final agency action on the employee's formal complaint by the Administrative Law Judge.

10.   The Plaintiff has exhausted all available administrative remedies in accordance with § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §s 2000e-5 42 U.S.C. The Plaintiff timely filed an Administrative Equal Employment Opportunity Complaint with USDA Office of Civil Rights on **November 13, 2012** and amended complaint dated **November 13, 2012** asserting that she was continuously harassed, subjected to differential treatment as compared to white male employees and younger

white employees. The Plaintiff was paid less salary given her position and responsibilities in violation of the Lilly Ledbetter Fair Pay Act of 2009.

11. The USDA Office of Civil Rights accepted the complaint and amended complaint on April 25, 2013. The Plaintiff promptly complied with all requests for information and fully cooperated in the agency's investigation of this matter.

12. More than one hundred and eighty (180) days have passed since the Plaintiff filed her complaint with the USDA Office of Civil Rights; More than one hundred and eighty (180) days have passed since the Plaintiff filed her amended complaint with the USDA Office of Civil Rights. The USDA has not taken final agency action regarding these matters, and a voluntary resolution regarding the matter has not been reached.

## III.   STATEMENT OF FACTS

13. This is an action to vindicate violations of the Plaintiff's civil rights and to redress the Defendants unlawful and discriminatory conduct and employment practices. Defendants discriminatory conduct and employment practices demonstrate a pattern of continuous illegal practices.   As a result of the Defendants ongoing harassment, wrongful discrimination in conduct and employment practices have harmed the Plaintiff's interests.

14. The Plaintiff was hired as a Management Analyst 0343 AP 3 / 4 in the Business Management Leadership Program under the Federal Career Internship Program in December of 2010. At that time the USDA Food Safety and Inspection Service was part of the Public Health Human Resources System otherwise know as *paybanding*.

The Plaintiff's salary in December 2010 as a Management Analyst 0343 AP 3 was equivalent to a GS 11 Step 5. The Business Management Leaders program required a two year trial period and at the end of the third year the Plaintiff would be converted to competitive status as a Management Analyst 0343 at the AP 4 level. However, the program was abolished through Executive Order three months after the Plaintiff was hired.

15.     In January of 2011 through Executive Order the Federal Career Internship Program was abolished. Agencies were directed to convert participants according to the guidance provided by John Berry, Secretary of the United States Office of Personnel Management, in a memo dated January 5, 2011. Which provides in part:

" *Incumbents who have completed less than one year of continuous Federal Service as of March 1, 2011 will continue to be in a probationary period, even after their conversion to competitive service, until they reach the one year service mark. That is, service under the FCIP or other eligible Federal service would count toward the completion of the* **one year federal period**. *It is advisable to be mindful of the passage of time and monitor performance closely during the balance of the time available, because the* **observation period will now be shorter than what was originally anticipated.**"

16.     The Plaintiff completed her one year of Federal Service in December of 2011 and received a Standard Form 50 dated January 29, 2012 acknowledging that Plaintiff was at full performance level of an AP 4 Management Analyst 0343. An AP 4 was equivalent to a GS 12/13. At that time Plaintiff became vested with the statutory rights of a Federal employee.

17.  Beginning January 2011 Plaintiff began to inform Defendants that she was not an intern, but a probationary employee. Plaintiff informed Defendant Rottenberg, who at that time was a Training Officer in the Office of Civil Rights where Plaintiff was assigned, that she was a probationary employee subject to statutory rights upon completion of 1 year of employment with USDA Food Safety and Inspection Service. Defendant Rottenberg stated that she did not know what the Plaintiff's status was as she did not perform the hiring and therefore would continue to treat her as an intern.

At some time on or about March 2011 Defendants hired, assigned and permitted Farook Sait to become Director of Food Safety and Inspection Service  Office of Civil Rights. Mr. Sait hired Defendant Rottenberg as his Deputy Director. Mr. Sait was a known civil rights violator, subject to a settlement agreement that prevented him from supervising minority women.

The Plaintiff informed Ms. Rottenberg, that it is Discrimination per se to have a civil rights violator act in violation of the terms of his agreement. Plaintiff asked to speak with Defendant Almanza, Administrator of the Agency. Defendant stated any communication with the Administrator would be through Defendant Rottenberg or Ms. Amanda Krot, Or Plaintiff could speak to the Director Mr. Sait.

18.  Subsequently, Plaintiff remained quiet except to inform Defendant Rottenberg that Defendant's payment of $500,000.00 for a Civil Rights Training at the Ritz Carlton was excessively expensive and not monitored for its value to the public. Plaintiff informed Defendant Rottenberg that the Conference at the Ritz Carlton gives the appearance to serve Defendant Al Almanza, Administrator of USDA FSIS and Defendant Rottenberg

6

personal purpose. At this time Plaintiff was retaliated against by Defendant Rottenberg. Specifically, Ms. Rottenberg removed Plaintiff's work assignments and gave them to Ms. Amanda Krot, a younger white employee with less formal education than Plaintiff. Ms. Krot was a Management Analyst 0343 the same title and series of the Plaintiff.

19.     Defendant Rottenberg and Mr. Sait began to humiliate the Plaintiff on several occasions by openly discussing in close proximity to the Plaintiff how to remove the Plaintiff from the Food Safety and Inspection Service Office of Civil Rights and that the Plaintiff was merely an old intern.

As part of the scheme to force the Plaintiff out of the Office of Food Safety and Inspection Office of Civil Rights, Defendants made Plaintiff take inventory of a filthy storage room, in Beltsville, Maryland with *inter alia* hazardous materials, and a compound known as gunpowder used to burn the skin off chickens.

20.     Upon complaining of her demeaning treatment to her second line supervisor, Peter Bridgeman, the Plaintiff was told that she *would be well served if she remained silent about her poor treatment*. Thereafter, Defendants continued referring to the Plaintiff as an intern.

At this time the Plaintiff became concerned for her professional and personal wellbeing and began to search for other opportunities out of the USDA FSIS.

21.     In January of 2012 Plaintiff was requested to work on the Administrative Solutions Project BluePrint for Stronger Service in the Office of the Secretary, Secretary Vilsack. The Plaintiff was a Management Analyst 0343 AP 4 and was performing at the same

level of responsibilities and contributions as the other two white employees on the project namely, Jaimie Edmunds nee Wadzink and Christopher Nelson, both of whom are white and under 36 years of age. Defendants refused to increase Plaintiff's pay to a GS 13 or GS 14 salary. The Plaintiff requested equal pay for the year long assignment, but was told that she was an intern and ineligible. Moreover, the Plaintiff learned that Defendant Rottenberg, and Defendant Myers spoke to Mr. Nelson regarding her status as an intern and insinuated that the Plaintiff may not be a good fit for a permanent position on the Secretary's Administrative Solutions Project Blueprint for Stronger Service. Moreover, Defendants had the Plaintiff sign a document that was never in use previously, nor has ever been in use subsequently, detailing exactly what Plaintiff would learn while on the Project. No other employee had to complete the *ad hoc* form created by the Defendants.

22.   At the end of the 2012, with no additional pay, Defendant Rottenberg and Defendant Myers reassigned the Plaintiff to the Food Safety and Inspection Service Labor and Employee Relations Division, a low performing unit with high turnover and a history of employee dissatisfaction, including workplace violence. During the Plaintiff's first few months of 2013 in the unit there was a turn over of seven supervisors in addition to staff leaving the unit as a result of the instability.

In reassigning the Plaintiff to this dysfunctional unit, Defendant Rottenberg and Defendant Myers did not adhere to USDA FSIS procedural formalities such as letter of notification, nor a meeting with Human Resources explaining rights and resources. As such Defendants violated their own Agency Directive on reassignments.

23. When the Plaintiff arrived at the new office on November 5, 2012, no one knew what her responsibilities were nor did anyone provide her with a job description. In the course of one day, Defendants told the Plaintiff that she would be a Litigation Specialists GS 14, then Employee Relations Specialists GS 13, then a Labor Relations Specialists GS 13. Subsequently, she was informed that she would be on detail in another unit. Ultimately, Defendants informed the Plaintiff she would be performing Labor Relations work at a GS 13. The Plaintiff's pay did not increase to reflect the position. From November 5, 2012 and the remainder of 2013 Plaintiff continued to suffer harassment and discrimination. Specifically, Plaintiff's name was left off of an Agency call list as if Plaintiff did not exist in the Agency, Plaintiff was denied free training with the Office of Personnel Management for the position of a Labor Relations Specialist that would have assisted Plaintiff perform the position that she was reassigned to her position, Plaintiff was questioned why she needed time to vote in the national elections and was sent several emails telling her about how much time was given to vote, Plaintiff was asked why she needed 8 hours of sick leave to obtain a doctor's note when a supervisor had asked for the Doctor's note. Moreover, Plaintiff was not given access to any regularly used equipment as other employees such as copier, scanner, shared drives, and such causing Plaintiff to have extraordinary difficulty to ensure her job would be performed fully. The stress of ensuring that Plaintiff's work was performed well despite the intentional deprivation of resources, and professional indifference caused the Plaintiff anxiety and severe crying episodes.

24. Moreover, on or about June 2014 Plaintiff applied for a Litigation Specialist GS14 position and was told by Shannon Sarbo, USDA FSIS Human Resources Specialist, that she was not referred because she did not have a performance review although she met all of the

qualifications. The Plaintiff did not receive a performance review because there was no supervisor to provide it for fiscal year 2013. The Labor and Employee Relations Unit had such a heavy turnover that no Supervisor remained long enough to provide a review.  Upon writing the Deputy Administrator in August 2014, the Plaintiff was called for an interview the next day, but was informed it was a formality; she did not get the Litigation Specialist GS 14 position. Thus the dysfunctional unit had indeed caused Plaintiff harm in that she was not considered initially.

Later, the Plaintiff received an email on a Sunday August 10, 2014 that the unit had decided to go in another direction with more experienced candidates from outside the government.

At some time later, two more Litigation Specialists GS 14 positions came open and the Plaintiff applied again. Again, the Plaintiff was told she was not the best qualified candidate. And, again the Agency hired from outside the government.

The Plaintiff applied for a third time when another position came available. The Plaintiff was informed by email dated Sunday October 5, 2014 that she would not be interviewed because the unit was going in another direction.

At some point thereafter, Plaintiff received a phone call from the Unit secretary requesting that she interview for the Litigation Specialist position, but was told she would have to supply a writing sample.

The Plaintiff at this time withdrew her application believing it was a pretext because Plaintiff was already providing written documents to the Litigation Unit. In fact Plaintiff had

written several documents that resulted in success for the Agency on behalf the Labor Relations Unit. Therefore there was no need to supply more writing samples.

Also, Defendants stated that they needed candidates with experience but the Unit had a longterm contract with the Broida and Hadley law firm. The Litigation Specialist GS 14 position job announcement did not require that the applicant be an attorney. Plaintiff was an attorney.

The Litigation Unit is overseen and receives direction from the overarching leadership of Defendant Rottenberg Chief of Staff and Defendant Al Almanza, Administrator and Co Deputy Under Secretary.

25. Plaintiff made repeated attempts to inform her supervisor and made every attempt to inform her supervisors of the pay disparity, but they sought to justify the disparity by calling Plaintiff an intern. Only in February of 2014 did Plaintiff receive a GS 13 step 1 pay despite the 2 year delay. Plaintiff filed an Equal Employment Opportunity complaint on January 14, 2014 regarding the pay disparity and the failure of the agency to provide Plaintiff with a performance review, which inhibits Plaintiff's opportunities for new employment within the federal government in retaliation of her first Equal Employment Opportunity complaint filed in November of 2012.

26. During the four years that Plaintiff has worked for USDA Food Safety and Inspection Service, Plaintiff has not been promoted. Even despite lesser qualified candidates receiving promotions, specifically, Ms. Amanda Krot a former Management Analyst was promoted to Deputy Director of Civil Rights.

Ms. Jennifer Conrad, a Management Analyst received financial bonuses and benefits and was reassigned to positions without competition.

Ms. Cara LaConte was a contractor in Financial Services when Plaintiff was hired and has become the Director of the Financial Management Division. Defendant Rottenberg was a training officer, then Deputy Director and is currently Chief of Staff to the Defendant Almanza.

According to the USDA FSIS Management Directive 715 Hispanic women are not promoted, not hired and there is a severe deficiency of Hispanic employees in management and leadership positions. However, the Agency's poor treatment of Hispanic women and Women of Color are largely unaddressed.

## V.        STATEMENT OF CLAIM

During her employment by Defendants, the Plaintiff suffered ongoing continuous harassment, intentional discrimination, and retaliation (reprisal) by Defendant Al Almanza, Administrator and Co-Deputy Under Secretary of FSIS, Defendant Rottenberg Chief of Staff to Alfred Almanza, Defendant Myers, Assistant Administrator of FSIS, Defendant Bridgeman, Special Assistant to the Assistant Administrator of FSIS based on her age (52), race Hispanic African American in violation of § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5   42 U.S.C. and reprisal (prior EEO activity) with regard to work assignments, training, work environment, and overall treatment. Plaintiff also asserts a claim under the Lilly Ledbetter Fair Pay Act of 2009.

## COUNT I.

## <u>Defendants Engaged in Disparate Treatment of Similarly Situated Employees Violation of Title VII 1964 Civil Rights Act</u>

27.     Plaintiff was trained and given lesser assignments than Mr. Thomas Nasvytis approximately 26 years of age and white and Ms. Alexandria Sifuentes Carnes approximately 27 years of age and Hispanic hired on or about the December 2010 as a Management Analyst 0343 in the same Business Management Leaders Program under the Federal Career Internship Hiring Authority.

Plaintiff has more experience and education than the other two employees, yet Defendant Rottenberg, directed Plaintiff to take basic secretarial and administrative training unlike the other similarly situated Management Analysts.

28.     At some time after the Executive Order conversion to career status in March of 2011, Thomas Nasvytis was converted to a Contracting Officer with specialized training in a specialized and marketable series in Government with greater opportunity for professional growth according to the United States Office of Personnel Management Series Guidebook.   Ms. Sifuentes Carnes remained a Management Analyst 0343. Conversely, Plaintiff was the only employee reassigned out of Business Management Leaders Program participants.

Plaintiff was reassigned from a Management Analyst 0342 to a Human Resources Specialist 0201 on November 5, 2012. The Labor and Employee Relations Office is well known to have heavy turnover and a history of dysfunction and turmoil, including workplace violence.

29. Neither Mr. Nasvytis nor Ms. Carnes were referred to as Interns, relegated to secretarial duties of answering phones despite their lack of work experience, or to clean a hazardous supply room as part of their assignments.

30. Defendants promoted other white Management Analysts. Specifically, Amanda Krot, Management Analyst currently Deputy Director of Civil Rights, Jennifer Conrad currently Management Analyst in the Office of International Affairs. Moreover, while Plaintiff was told she was an intern, several other young white employees were promoted during Plaintiff's three years of employment such as Dan Smigal, Hygienist, promoted to Branch Chief and then Chief Health Officer. Cara LaConte a contractor hired as a Branch Chief currently a Director of Financial Management Division.

31. Moreover, in the Division where Plaintiff was assigned Defendants continued to hire young and/or white males as supervisors who within a short period of time received promotions. Specifically, David Farrell Labor Relations Branch Chief promoted to Acting Director of Labor and Employee Relations then left the Agency; Rashida McIlwain Jackson, age 36, Employee Relations Branch chief became Acting Director left the Agency; Steve Wenk Labor Relations Lead promoted to Acting Director of Labor and Employee Relations, Joe Abbott promoted to Director of Labor Relations currently Director of Human Resources Operations. The above employees were hired over a former Judge Advocate General, and instead of a 40 year old female attorney with years of experience. Sandra Fortson, a Judge Advocate General, subsequently left the Agency because of their disparate treatment of minority women.

32. In addition to not receiving same or similar training or promotional opportunities, Plaintiff did not receive a promotion or equal pay in 2012 while working on the

Administrative Solutions Project with two young white employees even though Plaintiff performed the same work and had her work acknowledged by receiving the Secretary's Honor Award.   Specifically, employees Jaime Edmunds nee Wadzink, age 36, white, and Chris Nelson, age 35, white, were both paid higher and received promotions as a result of the work performed on the Administrative Solutions Project.

Furthermore, their respective USDA Agencies paid the additional salary and offered their promotion while USDA FSIS Plaintiff's Agency reassigned her to a poor performing unit with substantially high turnover with no additional pay.

### Count II.

### Defendants Engaged in Intentional Discrimination and Are Aware of the Disparate Treatment and Have Done Little to Correct or Admonish Wrongdoers.

33.    Plaintiff informed Defendant Peter Bridgeman and Management that Defendant Carmen Rottenberg and Farouk Sait had touched her skin to ask if she was a Negro, and that Defendant Ms. Rottenberg was removing her assignments and discussing Plaintiff within earshot as an attempt to humiliate Plaintiff. Defendant Mr. Bridgeman wrote in Plaintiffs 2011 performance appraisal that "Plaintiff would be well served if she should keep silent what happened in Civil Rights."

34.    Plaintiff informed Defendant Al Almanza, Administrator about the intentional discrimination, disparate treatment, and unequal pay. Al Almanza told Plaintiff to find another job. Plaintiff informed him that young white employees, white males and females were promoted quicker and without the same scrutiny as minority employees, and that Hispanics were virtually non-existent in the Agency, according to the MD 715 Report prepared by the Agency for the Equal Employment Opportunity Commission. Plaintiff

offered to give him the statistical and OM survey information substantiating her contention. Defendant Almanza told Plaintiff in a room full of Plaintiff's co-workers that "you have to go someplace else if you want an opportunity." Several coworkers came over after he left to support and encourage Plaintiff.

Plaintiff also informed Defendant Mr. Al Almanza that the promotion of Defendant Carmen Rottenberg his Chief of Staff was uncomfortable because of their close personal relationship. It made Plaintiff uncomfortable when Defendant Rottenberg would rub on Defendant Administrator Almanza's shoulder and offer him water as if they were involved personally instead of professionally. Particularly Defendant Rottenberg was 36 and had received several promotions under Defendant Almanza.

35.   Plaintiff informed Defendant Jacqueline Myers about intentional discrimination, disparate treatment and unequal pay such as Plaintiff being assigned cleaning up a storage room with Gun powder and was told by Defendant Myers that Ms. Myers "wants total world domination" and that Plaintiff's "assignments were because Plaintiff is an intern and need to learn." Defendant Myers was informed that Plaintiff had won the Secretary's Honor Award and knew Plaintiff was working on the Administrative Solutions Project as a Management Analyst, Lean Six Sigma Black Belt efficiency expert, and a Certified Project Manager.

36.   Defendants continued to disparage and treat Plaintiff as an intern even though the program was abolished by Executive Order in March 2011 and Plaintiff was a career tenured employee.

37.   Plaintiff applied for a GS 14 Litigation Specialist three times. Specifically, Plaintiff applied and was informed she was not referred because her performance appraisal was

not signed. Even though the position was advertised for and open to any US citizen. Plaintiff called Human Resources and was told by Shannon Sarbo in Human Resources that "Management told her not to refer my application." Plaintiff wrote an email to Deputy Administrator, Phil Derfler, who had previously informed Plaintiff that having seven supervisors in one year and none who could sign her appraisal would not be a detriment. It was a detriment.

Additionally, Plaintiff asked why this was a hindrance for her when any US citizen without a performance appraisal would be considered, but Plaintiff was not considered. Plaintiff was subsequently interviewed as a courtesy, but informed on a Sunday that she did not get the job.

Similarly, on application number two for the GS 14 Litigation Specialist position Plaintiff was informed on a Sunday that she was not going to be interviewed even though her application was referred because there were other more experienced candidates at the 14 level. At some point the position opened up again, but Plaintiff was asked to prepare a writing sample and an essay, items that were not previously required. Plaintiff withdrew from consideration stating lack of trust in the process.

**Count III.**

**Defendants  Continued to Violate the Lilly Ledbetter Act Even After Plaintiff Offered**

**Documents In Support of Her Claim**

38.  Plaintiff was reassigned to a Human Resources Labor Relations position where she received lower pay. According to ta 2005 Labor and Employee Relations Handbook employees in that unit were GS 13. Plaintiff was paid $10,000.00 lower than a GS 13. Additionally, Plaintiff performed at a high level all of 2012 while working on the

Administrative Solutions Project and was not paid consistent with other young white or male employees on the Administrative Solutions Project. In November 2012, when the Plaintiff was reassigned to the Labor and Employee Relations Unit. Plaintiff informed Management several times of the disparity and was told that she was an intern.

39. Plaintiff did not receive a performance bonus after the reassignment in 2013 because of the high turnover in the office no one could rate her. When Plaintiff informed the Defendants that it was through no fault of her own, she was told that the Agency would not pay her bonus because Management failed to have a stable supervisor in place.

40. Plaintiff informed Defendant Almanza of the statements he made in the Federal Register that employees would receive equal pay as their GS counterparts and was told that Plaintiff could look for work elsewhere.

41. The Plaintiff has been denied the opportunity to take Leadership courses compared to the other Management Analyst, ultimately making it less likely that Plaintiff will receive a promotion. Additionally, Plaintiff change in series from a Management Analyst to a Human Resources Specialists has caused the Plaintiff humiliation as the Agency has a running joke that the undesirable employees are sent to Human Resources.

42. At the end of 2013, Defendant sent Jackie Shamblin to the Labor and Employee Relations Division. Jackie Shamblin was the former Director of Human Resources who was reassigned as a result of a workplace violence investigation where he threatened to taze his staff. Mr. Shamblin sat across from the Plaintiff. His Reassignment was a direct request form the Defendants. Plaintiff was beyond intimidated because of Mr. Shamblin's volatile temper and his relationship with the Defendants.

Mr. Shamblin subsequently left the Agency. The position he held in the Labor and Employee Relations Division was Human Resources Specialist GS14.

## PRAYER FOR RELIEF

To cure the conduct alleged in this action, Plaintiff respectfully requests the Court to:

1. Declare that the actions of the Defendant alleged in this complaint constitute discriminatory practices taken against Plaintiff because of her age (52), race, Hispanic and African American and reprisal (Prior EEO activity), in violation of 42 U.S.C. § 2000e; and Lily Ledbetter Fair Pay Act of 2009 and the conduct of Defendants, as set forth herein, in violating Ms. Guerrero's rights caused injuries, damages and harm to Ms. Guerrero including, but not limited to, past and future economic loss, past and future non-economic losses, including extreme emotional distress, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, impairment in the quality of life; and consequential losses;

2. Enter an injunction ordering Defendant to make Plaintiff whole with full back pay, including compensation for the value of benefits she lost, from the date of her non-selection until the date of her promotion with pre and post judgment interest and promotion to the position of Management Analyst, GS-0343-14/2 and include any step and increases and promotions that might have resulted but for the illegal conduct alleged in this complaint or, in the alternative, front pay;

3. Award Plaintiff $300,000.00 in compensatory damages for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life; and consequential loses;

4. Award Plaintiff for exemplary and/or punitive damages in an amount to be shown at trial;

5.    Award Plaintiff full and reasonable attorney fees and the costs of this action and related administrative proceedings;

6.    Immediately remove Defendants Carmen Rottenberg Chief of Staff to Alfred Almanza, Jacqueline Myers, Assistant Administrator Food Safety and Inspection Service, Peter Bridgeman, Special Assistant Food Safety and Inspection Service and any other agency official found responsible for the discriminatory treatment of Plaintiff from any position, which enables them to discriminate and retaliate against any employee;

7.    Enjoin Defendants from taking personnel actions, evaluating employee's performance, attempting to separate employee from employment, criticizing her performance, and otherwise taking adverse employment actions against the employee because of her race and age including sending assignments with unreasonable timelines while she is on sick leave caring for her daughter.

8.    Order that all negative information, criticism and any reference to Plaintiff be stricken from all records.

9.    Grant such other and appropriate relief as the court deems just.


Respectfully submitted this day of    12th Day of December 2014.


Ms. Guerrero
Plaintiff, Pro Se

## Certificate of Service

The undersigned certifies that a true and accurate copy of this Complaint was mailed / and electronically delivered on December 12, 2014 to the following Individuals:

THOMAS VILSACK, Secretary
United States Department of Agriculture
Office of the Secretary
Jamie L. Whitten Building
Washington DC 20250

ALFRED ALMANZA AKA AL ALMANZA,
Administrator
&  Co Deputy Under Secretary,
United States Department of Agriculture,
Food Safety and Inspection Service
331- E Jamie L. Whitten Building
Washington DC 20250
Ph: 202 720-7025

CARMEN ROTTENBERG, Chief of Staff
United States Department of Agriculture
Food Safety and Inspection Service
331- E Jamie L. Whitten Building
Washington DC 20250
Ph: 202 720-6618

JACQUELINE MYERS, Assistant Administrator
United States Department of Agriculture
Food Safety and Inspection Service
347-E Jamie L. Whitten Building
Washington DC 20250
Ph: (202) 720-4425

PETER BRIDGEMAN, Special Assistant
United States Department of Agriculture
Food Safety and Inspection Service
347-E Jamie L. Whitten Building
Washington DC 20250
　　　Respectfully submitted this day of 12th day of  December 2014.

　　　　　　　　　　　　　　Sinceri Guerrero
　　　　　　　　　　　　　　Plaintiff , Pro Se
　　　　　　　　　　　　　　PH: (202) 905-8833