## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SINCERI GUERRERO,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 14-2107 (RMC)** |
| | ) |
| **THOMAS VILSACK, Secretary,** | ) |
| **United States Department of Agriculture,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM OPINION

Sinceri Guerrero has worked for the U.S. Department of Agriculture since December 2010.  Proceeding pro se, she sues the Secretary of the Agriculture, Tom Vilsack, in his official capacity.  Ms. Guerrero alleges that she has suffered continuous harassment, intentional discrimination, and retaliation due to her age (52) and race (Hispanic/African American) and that she has been underpaid due to such discrimination.  The Secretary moves to dismiss her case in part, arguing that Ms. Guerrero has failed to exhaust some of her claims at USDA before taking them to court.  As to others, the Secretary argues that they were not timely brought or do not state a claim for relief that is plausible.

The Court agrees that some of Ms. Guerrero's claims are untimely, but also questions whether USDA fulfilled its obligations to investigate adequately Ms. Guerrero's charges of discrimination—perhaps because she accused the Office of Civil Rights, which is the office that investigates such complaints.  And contrary to the Secretary's position, several of Ms. Guerrero's allegations state a plausible claim for relief.  Because most of the allegations in the Amended Complaint warrant discovery, the Secretary's motion will be granted only in part.

# I.  FACTS

All facts alleged in Ms. Guerrero's Amended Complaint, Dkt. 2 (Am. Compl.) are taken as true in this procedural posture.  *Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015) (citing *Brown v. Sessoms*, 774 F.3d 1016, 1020 (D.C. Cir. 2014)).  A pro se complaint is "to be liberally construed" and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).[1]

The Court may also review materials referenced in the Complaint, "particularly where, as here, the plaintiff has presented the document to the Court in support of its claims." *Am. Council of Life Insurers v. D.C. Health Benefit Exch. Auth.*, 73 F. Supp. 3d 65, 104 n.21 (D.D.C. 2014) (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)); *see also Vanover v. Hantman*, 77 F.Supp.2d 91, 98 (D.D.C. 1999) (concluding that a court could properly consider, on motion to dismiss, "various letters and materials produced in the course of plaintiff's discharge proceedings" that were "referred to in the complaint and [were] central to plaintiff's claims") *aff'd*, 38 Fed. App'x 4 (D.C. Cir. 2002).

## A.  Ms. Guerrero's Initial Federal Employment

Sinceri Guerrero's federal employment began in December 2010, when she was hired under the Business Management Leadership Program into the USDA's Food Safety and Inspection Service (FSIS).  Her series and grade were Management Analyst 0343 and AP-3, respectively.  AP-3 was equivalent to a GS-11, Step 5 pay grade.   The leadership program was

---

[1] Although proceeding pro se, Ms. Guerrero is an attorney.  Am. Compl. ¶ 21.  Her complaint nevertheless is due liberal construction.  *Floyd v. Lee*, 968 F. Supp. 2d 308, 329 (D.D.C. 2013) (citing *Rogler v. Biglow*, 610 F.Supp.2d 103, 104 n. 2 (D.D.C. 2009)).

part of a broader Federal Career Internship Program (FCIP), under which successful participants would be converted—after a two-year trial period and a third year of service—into Management Analysts at the AP-4 pay grade.

That was not to be, however, as the FCIP was abolished by Executive Order effective March 1, 2011. *See* Exec. Order No. 13,562 (Dec. 27, 2010). The Office of Personnel Management directed agencies on how to handle their FCIP interns: "[A]ll agencies with FCIP incumbents must convert them to career-conditional or career positions in the competitive service." OPM, *Executive Order 13562 – Recruiting and Hiring Students and Recent Graduates* (Jan. 5, 2011). More specifically, OPM directed that "[i]ncumbents who have completed less than one year of continuous Federal Service as of March 1, 2011 will continue to be in a probationary period, even after their conversion to competitive service, until they reach the one year service mark. . . ." *Id.* Ms. Guerrero completed her one year of probationary service in December 2011 and received a Standard Form (SF) 50 on January 29, 2012, reflecting her new status as a regular competitive employee and a Management Analyst 0343, AP-4.

Ms. Guerrero spent most of her probationary year assigned to the FSIS's Office of Civil Rights.[2] Ms. Guerrero claims to have suffered most of her discrimination at the hands of that office.

### B. The Alleged Discrimination

The alleged discrimination began in January 2011, when Ms. Guerrero informed her Training Officer, Carmen Rottenberg, that the FCIP had been abolished and that Ms.

---

[2] That office provides the FSIS Administrator with "advice, guidance and assistance on the implementation, management and compliance with Equal Employment Opportunity programs." *See* http://www.fsis.usda.gov/wps/portal/informational/aboutfsis/civil-rights (last visited on September 29, 2015).

Guerrero was therefore a probationary employee.  Ms. Rottenberg replied that she did not know Ms. Guerrero's status and would continue to treat her as an intern.  As indicated below, references to Ms. Guerrero as an intern, rather than a regular employee, continued to plague her FSIS career.

Farook Sait became the Director of the Office of Civil Rights in March 2011 and promoted Ms. Rottenberg to serve as his Deputy Director.  The Complaint alleges that "Mr. Sait was a known civil rights violator [and] subject to a settlement agreement that prevented him from supervising minority women."  Am. Compl. ¶ 13.  Ms. Guerrero complained about Mr. Sait's appointment and asked to speak to FSIS Administrator Alfred Almanza.  She was told that any communication with Director Almanza would have to go through Ms. Rottenberg.

Sometime in 2011, Ms. Guerrero suggested to Ms. Rottenberg that it was "excessively expensive" to spend $500,000 on a Civil Rights Training seminar at the Ritz Carlton in Crystal City, VA.  This suggestion was unwelcome to Ms. Rottenberg, who "removed Plaintiff's work assignments and gave them to Amanda Krot, a younger white employee with less formal education" than Ms. Guerrero but who was also a Management Analyst 0343 AP-4.  Id. ¶ 14.  At other, unspecified times in 2011, Mr. Sait and Ms. Rottenberg spoke openly of Ms. Guerrero as "merely an old intern" and required her to take inventory of a filthy storage room in Beltsville, MD.  Id. ¶ 15.  Ms. Guerrero complained about all of this to her second-line supervisor, Peter Bridgeman, who told her that "she would be well served if she remained silent about her poor treatment."  Id. ¶ 16.

In June 2011, Ms. Guerrero left the Office of Civil Rights to work in the FSIS Office of Management.  She left that job in October 2011 to work in the FSIS Workers Compensation, Safety and Health Division.

4

In January 2012, Ms. Guerrero was asked to work on the Administrative Solutions Project Blueprint for Stronger Service, located in the Office of the Secretary of Agriculture. She was still classified as a Management Analyst 0343 AP-4 but worked alongside (and filled the same roles as) younger, white coworkers who were paid at a higher grade. When Ms. Guerrero asked for a commensurate increase to a GS-13 or GS-14 pay grade, she was "told that she was an intern and ineligible." Am. Compl. ¶ 17. She alleges further that Ms. Rottenberg conspired with others to keep Ms. Guerrero from obtaining a permanent position in the Secretary's Office, and that she was made to sign a form never used for comparable employees, on which Ms. Guerrero had to predict what she would learn on the assignment.

In November 2012, Ms. Guerrero was reassigned by Mses. Rottenberg and Myers to FSIS's Labor and Employee Relations Division (LERD).[3] Despite Ms. Geurrero's best efforts to remain where she was, she was told that she was needed in LERD. Ms. Guerrero alleges that that LERD was "a low performing unit with high turnover and a history of employee dissatisfaction, including workplace violence." *Id.* ¶ 18. During her first few months in the unit, seven supervisors and other staff left. She also alleges procedural defects in her reassignment, *viz.* that she never received a "letter of notification" or "a meeting with Human Resources explaining rights and resources." *Id.* No adjustment to her pay was made. When she arrived, moreover, "no one knew what her responsibilities were nor did anyone provide her with a job description." *Id.* ¶ 19.[4] After much confusion, she was informed that she would perform labor-relations work as a GS-13.

---

[3] According to Ms. Guerrero's first EEO Complaint, this reassignment occurred on October 4, 2012, not November as alleged in the Amended Complaint. The month is immaterial.

[4] Because of a scrivener's error, this paragraph is incorrectly numbered "29" in the Amended Complaint. As it falls between Paragraphs 18 and 20, the Court will refer to it as Paragraph 19.

Ms. Guerrero alleges that she then suffered harassment and discrimination throughout 2013: she was (1) not placed on the "Agency call list" to be informed of necessary information; (2) denied free OPM training for her new position; (3) questioned why she needed to take time off to vote; (4) questioned why she needed sick leave to obtain a requested doctor's note; and (5) not given access to necessary office equipment such as a copier, scanner, and shared drives. These circumstances imposed great stress and caused Ms. Guerrero "anxiety and severe crying episodes." *Id.*

### C.  Applications to Become a Litigation Specialist

In June 2014, Ms. Guerrero applied for a Litigation Specialist position at a GS-14 grade.  She was not referred as a qualified candidate, however, because she did not have a signed evaluation due to the fact that she had no assigned supervisor to complete an evaluation for fiscal year 2013.  Ms. Guerrero wrote to the Deputy Administrator in August 2014 to complain, and was then granted an interview, but the job went to someone already considered in the normal course.  Two subsequent applications for GS-14 Litigation Specialist positions were also unsuccessful.

When she applied yet again to become a GS-14 Litigation Specialist, Ms. Guerrero was notified sometime after October 5, 2014 that she would have to submit a writing sample with her application. She immediately withdrew her application, in the belief that the writing-sample requirement was a pretext because she was "already providing written documents to the Litigation Unit."  Am. Compl. ¶ 20.  Ms. Guerrero therefore thought that "there was no need to supply more writing samples."  *Id.*  She did not get the job.

### D.  Pay Disparity

Ms. Guerrero alleges that she "did not receive a promotion or equal pay in 2012

while working on the Administrative Solutions Project with two young white employees even though Plaintiff performed the same work." *Id.* ¶ 28.  She adds that her work at that time was "acknowledged" as superior by her receipt of the Secretary's Honor Award.  By comparison, Ms. Guerrero avers that Jaime Edmuds nee Wadzink (a 36 year old white man) and Chris Nelson (a 35 year old white man) were "both paid higher and received promotions as a result of the work performed on the Administrative Solutions Project."  *Id.*

### E.  Procedural History

Ms. Guerrero first contacted an Equal Employment Opportunity (EEO) counselor on October 4, 2012, after she learned that she would be reassigned to LERD from her detail in the Office of the Secretary.  EEO Counselor's Report [Dkt. 6-3] (First EEO Compl.) at 2.  Ms. Guerrero was interviewed by the EEO Counselor on October 11, 2012.  *Id.* at 1.  The EEO complaint and interview narrative show that Ms. Guerrero alleged a single discriminatory act: on October 4, 2012, she was reassigned from the Office of the Secretary to LERD.  *Id.* at 2, 3.  The reassignment would result, in Ms. Guerrero's view, "in a series change from a Management Analyst (0343) to a Litigation Specialist (0201), a Human Resource series."  *Id.* at 2, 3.  Ms. Guerrero "stated [that] she feels the 0201 series is used to marginalize people of color."  *Id.* at 3.  She asked to remain a Management Analyst with the Administrative Solutions Project until December 2012, or "if forced" to leave that project, to be a Management Analyst in the Office of Public Affairs or LERD.  *Id.* at 2.

Ms. Guerrero filed a formal administrative complaint on November 13, 2012.  Complaint of Employment Discrimination [Dkt. 6-1] (First Admin. Compl.) at 1.  She cited the following issues: assignment of duties; reassignment; harassment; and terms/conditions of employment.  First Admin. Compl. at 1.  Under the heading "What Initiated Thi[s]

Discrimination Complaint," she wrote: "On October 4, 2012 I was notified by Peter Bridgeman . . . that I had to terminate my detail and return to FSIS OM as there was a critical need for my position in my originating office." *Id.* at 3. Far from her reassignment being the *only* alleged discriminatory act, however, the First Administrative Complaint added that her reassignment was "the final act in a long string of continual harassment and symptomatic of blatant institutional racism pervasive at USDA." *Id.* Over the course of a seven-page letter attached to her First Administrative Complaint, Ms. Guerrero alleged discriminatory acts that had begun in January 2011. First Admin. Compl. at 6 ("In January 2011 Farook Sait . . . asked me if I was a Negro. He stated people often confused him with a Negro because his skin color like mine was dark, he said."). USDA accepted only one issue for investigation: the October 4, 2012 reassignment for which she had received prior EEO counseling. USDA Letter [Dkt. 6-4] (First Acceptance) at 1. Near the end of the First Acceptance letter, USDA advised Ms. Guerrero: "If you do not agree with the defined claim, you must provide us with sufficient reasons, in writing, within 7 calendar days of receipt of this letter." First Acceptance at 2. Ms. Guerrero challenged that letter two days after she received it:

> [A]lthough I agree with the basic summary written in the USDA FSIS Civil Rights Acceptance letter that I received May 13, 2013, I want to ensure the previous persistent discrimination and harassment that I described in my November 15, 2012 EEO complaint summary are acknowledged. The basic statement as written and provided by USDA FSIS Civil Rights does not acknowledge the ongoing nature or the severity or seriousness of the previous incidents that led up to the initiating incident, the reassignment. I am writing this to prevent fragmentation.

Opp'n, Ex. C [Dkt. 9-2 at 23] (May 15, 2013 Letter from Ms. Guerrero to EEOC).[5]

_____

[5] Ms. Guerrero reiterated this objection at the September 18, 2014 hearing, Opp'n, Ex. L [Dkt 9-5] (9/18/14 Hr'g Tr.) at 1-9, stating that her issue had been "fragmented" and that the "statement in my complaint there was an ongoing continual harassment."

Ms. Guerrero contacted an EEO counselor again on January 24, 2014.  Complaint of Employment Discrimination [Dkt. 6-6] (Second EEO Compl.) at 1.  She complained of reprisal, in the form of a "fully successful" rating on her 2013 performance appraisal, and unequal pay because "when she began working as a Labor Relations Specialist" on November 5, 2012, she was not "compensated at a GS-13 level though her male coworkers [were]."  *Id.* at 2.  Another EEO interview and counseling session were conducted and another report written by the EEO counselor.  *Id.* at 3-4.

Ms. Guerrero filed a Second Administrative Complaint on March 13, 2014, which largely mirrored her Second EEO Complaint.  Complaint of Employment Discrimination [Dkt. 6-5] (Second Admin. Compl.) at 1.  She again alleged retaliation for her October 2012 complaint in the "fully successful" rating on Ms. Guerrero's 2013 Performance Appraisal, which was prepared without giving her an opportunity to submit her accomplishments or meet with her reviewing supervisors.  The Second Administrative Complaint also included an alleged violation of the Equal Pay Act because she should have been paid as a GS-13 when she was assigned to LERD in November 2012.  Ms. Guerrero sought back pay.

Based on the Second Administrative Complaint, USDA accepted three issues for investigation on June 16, 2014: (1) under-compensation since November 5, 2012; (2) fully successful rating on Ms. Guerrero's 2013 Performance Appraisal; and (3) "acts of harassment" on "unspecified dates . . . in that a management official consistently referred to her as an 'intern.'"  USDA Letter [Dkt. 6-7] (Second Acceptance) at 1.  As before, the Second Acceptance advised: "If you do not agree with the defined claims, you must provide us with sufficient reasons, in writing, within 7 calendar days or receipt of this letter."  Second Acceptance at 2.  Ms. Guerrero wrote no such letter.

**F.  This Lawsuit**

Representing herself, Ms. Guerrero filed suit in this Court on December 12, 2014 and amended her complaint six days later.  *See* Compl. [Dkt. 1]; Am. Compl. [Dkt. 2].  She alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 151.  Specifically, she relies on 42 U.S.C. § 2006-16, which prohibits "any discrimination based on race, color, religion, sex, or national origin" in personnel decisions made by the federal government, as defined.  At the time the Amended Complaint was filed, Ms. Guerrero was a 52-year-old Hispanic/African American female.  Ms. Guerrero also claims discrimination based on her age, which is prohibited by the Age Discrimination in Employment Act, 29 U.S.C. § 633a (ADEA), although the Amended Complaint cites only Title VII for this claim.

Count I complains of disparate treatment because similarly-situated employees of other races or ethnicities (under Title VII) and younger in age (under the ADEA) were treated better than she.  Count I also contains an allegation of disparate pay.

Count II alleges intentional discrimination and the knowing failure of USDA managers to provide her with any remedy for discriminatory actions.   It contains further allegations of disparate treatment and complains about Ms. Guerrero's unsuccessful attempts to obtain a job as a GS-14 Litigation Specialist.

Count III alleges a violation of the Lilly Ledbetter Fair Pay Act of 2009, which amended Section 706(e) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(e) and the ADEA, 26 U.S.C. § 2656(d), as well as other laws.[6]  The Lilly Ledbetter Act changed what it means for

---

[6] The Lilly Ledbetter Fair Pay Act was adopted by Congress to overrule the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), which held that the

a discriminatory compensation practice to "occur."  As amended, the law now provides that a discriminatory compensation practice occurs "[1] when a discriminatory compensation decision or other practice is adopted, [2] when an individual becomes subject to a discriminatory compensation decision or other practice, or [3] *when an individual is affected* by application of a discriminatory compensation decision or other practice, *including each time wages, benefits, or other compensation is paid*, resulting in whole or in part from such a decision or other practice." 42 U.S.C. § 2000e-5(e)(3)(A) (emphasis added); 26 U.S.C. § 2656(d)(3) (emphasis added).  The amendment was made applicable to discrimination by federal government agencies.  42 U.S.C. § 2000e-16(f).

Count III also complains the Ms. Guerrero did not receive a performance bonus in 2013; that she was denied the opportunity to take leadership courses offered to other Management Analysts; and that Mses. Myers and Rottenberg intentionally seated Jackie Shamblin across from her to intimidate her.  Mr. Shamblin was the former Director of Human Resources who lost his position after he threatened to use a taser on his staff.  Am. Compl. ¶ 38.

The Secretary moved to dismiss, or alternatively for summary judgment, on February 6, 2015.  Mot. to Dismiss [Dkt. 6] (Mot.).  Ms. Guerrero filed an opposition, Dkt. 9 (Opp'n).  The Secretary filed a reply, Dkt. 10 (Reply), and the motion is now ripe for resolution.[7]

## II.  LEGAL STANDARDS

The only statute cited in Ms. Guerrero's Amended Complaint is Title VII.[8]  It is

---

time period for filing a charge with the EEOC began running when the pay decision was made and not each time the employee received an unequal paycheck.

[7] Ms. Guerrero filed a Surreply without leave from the Court.  Surreply [Dkt. 11] (Surreply). The Secretary has since moved to strike the unauthorized filing.  Mot. [Dkt. 12] (Mot. to Strike). The Court will deny the motion to strike.

[8] She also claims that the Secretary has violated the "Lily Ledbetter Fair Pay Act of 2009."  *See* Am. Compl. ¶¶ 34-38 (Count III).  But as described above, that Act has no substantive

clear, however, that her allegations implicate several others.  And because Ms. Guerrero

repeatedly, and broadly, alleges "discrimination" and "retaliation," it is necessary to set forth the

applicable standards under each of the relevant statutes.

### A.  Discrimination under Title VII

Title VII of the Civil Rights Act of 1964, as amended by Equal Employment

Opportunity Act of 1972, prohibits status-based discrimination in the federal workplace.[9]  It

generally prohibits a federal employer from making any "personnel decision[]" based on an

employee's race, color, sex, religion or nationality.  *See* 42 U.S.C. § 2000e-16; *Baird*, 792 F.3d

at 168.  The "two essential elements of a discrimination claim" under Title VII are "that [1] the

plaintiff suffered an adverse employment action [2] because of the plaintiff's race, color,

religion, sex, [or] national origin."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008)

(collecting cases).

The first element, an "adverse employment action," is an established legal term.

*See generally Douglas v. Donovan*, 559 F.3d 549, 551-52 (D.C. Cir. 2009); *Ginger v. Dist. of

Columbia*, 527 F.3d 1340, 1343 (D.C. Cir. 2008).  It means "a significant change in employment

status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing significant change in benefits."  *Taylor v. Small*, 350 F.3d

1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761

(1998)).  An employee must "experience[] materially adverse consequences affecting the terms,

conditions, or privileges of employment or future employment opportunities such that a

---

prohibitions; it merely changed the definition of "occurs" in the context of discrimination by
compensation.

[9] *See* Equal Employment Opportunity Act of 1972, Pub. L. 92-261, sec. 10, § 715, 86 Stat. 103,
111 (codified as amended at 42 U.S.C. § 2000e-16).

reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002); *see also Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (distinguishing between "purely subjective injuries," which are not actionable, and "objectively tangible harm," which is).  An actionable adverse action "in most cases inflicts direct economic harm." *Burlington Indus.*, 524 U.S. at 762.  Thus, "not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).

To satisfy the second element, a plaintiff can claim that the "adverse employment action" violated Title VII on either of two grounds.  First, she can claim that it was perpetrated "because of" her race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a).  Or second, she can claim that any of those qualities "was a motivating factor for [the] employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2(m).[10]  The first is known as a "single-motive" or "pretext" theory of discrimination, and the second is known as a "mixed-motive" theory.[11]  *See generally Fogg v. Gonzales*, 492 F.3d 447, 451 (D.C. Cir. 2007).

If a plaintiff can summon direct evidence of discriminatory intent under either theory, such evidence will "generally entitle [the] plaintiff to a jury trial" and thus defeat a

---

[10] Section 2000e-2(m) was added by the Civil Rights Act of 1991, Pub. L. 102-166, § 107(a), 105 Stat. 1071, 1075.

[11] Under a mixed-motive theory, a plaintiff can establish an unlawful employment practice by showing that "discrimination or retaliation played a 'motivating part' or was a 'substantial factor' in the employment decision . . . without proving that an impermissible consideration was the sole or but-for motive for the employment action." *Fogg v. Gonzales*, 492 F.3d 447, 451 (D.C. Cir. 2007) (quoting *Porter v. Natsios*, 414 F.3d 13, 18, 19 (D.C. Cir. 2005)).  In a mixed-motive case, the defendant may offer a "limited affirmative defense" that it "would have taken the same action in the absence of the impermissible motivating factor." *Porter*, 414 F.3d at 19 (citing 42 U.S.C. § 2000e-5(g)(2)(B)).  If so, the court "shall not award damages or issue an order requiring any . . . reinstatement, hiring, promotion, or payment."  42 U.S.C. § 2000e-5(g)(2)(B)(ii).  A plaintiff who is successful in a mixed-motive case can only obtain injunctive relief, declaratory relief, and attorney's fees and costs. *Id.* § 2000e-5(g)(2)(B)(i).

defendant's motion for summary judgment.  *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576

(D.C. Cir. 2013) (per curiam) (quoting *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247

(D.C. Cir. 2011)).[12]  Indeed, "if a plaintiff is able to produce direct evidence of discrimination,

he may prevail without proving all the elements of a prima facie case."  *Swierkiewicz v. Sorema*

*N. A.*, 534 U.S. 506, 511 (2002) (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121

(1985)).  But if the plaintiff can only adduce circumstantial evidence of discrimination, *i.e.*, a

prima facie case only, courts apply the burden-shifting framework set forth in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The *McDonnell Douglas* framework applies as follows.  The plaintiff must first

make a prima facie case (1) that she is a member of a protected class; (2) that she suffered an

adverse employment action; and (3) that the unfavorable action gives rise to an inference of

discrimination.  *Youssef v. F.B.I.*, 687 F.3d 397, 401-02 (D.C. Cir. 2012); *Stella v. Mineta*, 284

F.3d 135, 145 (D.C. Cir. 2002); *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999).  The

burden then shifts to the defendant, which must "articulate some legitimate, nondiscriminatory

reason" for its action.  *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  If it

does, then the plaintiff must show by a preponderance of the evidence that the reasons advanced

by the employer were merely a pretext to hide discrimination.  *Id.*[13]

---

[12] Entitlement to a jury trial can arise from the evidence itself, without a finding of its credibility. *Ayissi-Etoh*, 712 F.3d at 576-77 ("[W]hen the issue comes down to a credibility contest of this kind, we cannot resolve the dispute at the summary judgment stage against the non-moving party.  [The] statement alone is direct evidence that in this case entitles [plaintiff] to a jury trial.").

[13] The D.C. Circuit has recently expounded upon the "multiple ways in which circumstantial evidence may support an inference that an employer's stated reason for a challenged employment action was not the actual reason," and that the real reason was prohibited discrimination or retaliation:

> The temporal proximity of an adverse action close on the heels of protected activity
> is a common and highly probative type of circumstantial evidence of retaliation.

On a motion for summary judgment, once an employer articulates a legitimate, non-discriminatory reason for its action(s), the plaintiff's prima facie case is only relevant in the context of the evidence as a whole. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). "[I]n considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08, 511 (1993); *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714-16 (1983)).

The courts have recognized a special type of discrimination claim based on a "hostile work environment." *See Baird*, 792 F.3d at 168 (citing *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006)). A hostile environment claim consists of multiple acts that "may not be actionable on [their] own" but become actionable due to their "cumulative effect." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). The constituent acts must be "adequately

---

> *See Hamilton* [*v. Geithner*], 666 F.3d [1344,] 1357–59 [(D.C. Cir. 2012)]. Other common ways of proving invidious motive—whether retaliation or discrimination—include pointing to evidence that the employer treated other, similarly situated employees better; that the employer is "lying about the underlying facts" of its decision; that there were "changes and inconsistencies" in the employer's given reasons for the decision; that the employer failed to "follow established procedures or criteria"; or that the employer's "general treatment of minority employees" (or, in the retaliation context, employees who asserted their Title VII rights) was worse than its treatment of non-minorities (or employees who did not assert their Title VII rights). *Brady* [*v. Office of Sergeant at Arms*], 520 F.3d [490,] 495 & n. 3 [(D.C. Cir. 2008)]. Invidious motive may also be inferred from "'an error too obvious to be unintentional.'" *Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 26 (D.C. Cir. 2013) (quoting *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)).

*Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015).

linked" such that they form "a coherent hostile environment claim." *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011).  For example, they might "involve the same type of employment actions, occur relatively frequently, and [be] perpetrated by the same managers." *Id.* (alterations omitted).  In addition, the acts must be "of such severity or pervasiveness as to alter the conditions of . . . employment and create an abusive working environment." *Hussain*, 435 F.3d at 366 (quotation marks and alterations omitted).  Severity and pervasiveness are determined by reference to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  The standard is an objective one.  *Id.* at 21.

### B.  Retaliation under Title VII

Title VII also protects federal employees from retaliation for having asserted their rights.  *See* 42 U.S.C. § 2000e-16(a).  To prove unlawful retaliation under Title VII, an employee must establish three elements: (1) that she made a charge or opposed a practice made unlawful by Title VII, (2) that the employer took a materially adverse action against her, and (3) that the employer took the action because of her protected conduct.  *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) (citing *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012)).  Ms. Guerrero's 2012 EEO and administrative complaints are the sorts of "charge[s]" that satisfy the first element.  Am. Compl. ¶ 21.[14]  The other two elements differ from their discrimination counterparts in important respects.

---

[14] The Amended Complaint elsewhere suggests that Ms. Guerrero was "retaliated against by Ms. Rottenberg" after pointing out that $500,000 was too much for a civil-rights training event.  Am. Compl. ¶ 14.  This does not constitute an allegation of unlawful retaliation under Title VII, as an over-priced training event is not "a practice made unlawful by Title VII."  42 U.S.C. § 2000e-16(a).  Any retaliation against Ms. Guerrero for opposing it is not actionable under Title VII.

Importantly, retaliatory conduct need not reach the same level of adversity as discriminatory conduct. *See generally Mogenhan v. Napolitano*, 613 F.3d 1162, 1165-66 (D.C. Cir. 2010) (citing *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 60-61, 67-68 (2006)). In other words, "Title VII's substantive [discrimination] provision and its anti-retaliation provision are not coterminous" because the "scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008) (quoting *Burlington N.*, 548 U.S. at 67). So instead of "affecting the terms, conditions, or privileges of employment," as discrimination must, retaliatory conduct need only "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Mogenhan*, 613 F.3d at 1166 (quoting *Burlington N.*, 548 U.S. at 68). Nonetheless, this material adversity requires "more than 'those petty slights or minor annoyances that often take place at work and that all employees experience.'" *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *Burlington N.*, 548 U.S. at 68).

Retaliation also differs from discrimination in its causation: retaliation claims must be proved according to traditional principles of but-for causation. *Univ. of Tex. SW Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) ("[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). Thus, there is no "mixed motive" retaliation. *Cf. EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 (2015) (contrasting *Nassar*'s but-for standard in the retaliation context with the more "relaxe[d]" standard in Title VII's mixed-motive discrimination provision, 42 U.S.C. § 2000e-2(m)). However, but-for causation does not mean that retaliation must be the *only* cause of the employer's action—merely that the adverse action would not have occurred absent the retaliatory motive. *Zann Kwan v. Andalex Grp. LLC*, 737

F.3d 834, 846 & n.5 (2d Cir. 2013); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 n.1 (7th Cir. 2014).

Finally, retaliation claims based only on circumstantial evidence are subject to the same burden-shifting framework of *McDonnell Douglas*, outlined above, as discrimination claims.  *See Allen*, 795 F.3d at 39.

### C.  Discrimination under the ADEA

The Age Discrimination in Employment Act (ADEA) prohibits discrimination against federal employees based on age.  29 U.S.C. § 633a.  The "two essential elements of a discrimination claim" under the ADEA are "that [1] the plaintiff suffered an adverse employment action [2] because of the plaintiff's . . . age."  *Baloch*, 550 F.3d at 1196 (D.C. Cir. 2008) (collecting cases).  Claims under the ADEA are subject to the *McDonnell Douglas* framework described above.  *Giles v. Transit Employees Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015) (citing *Smith v. Dist. of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005)).

### D.  Retaliation under the ADEA

The Supreme Court has also held that the "discrimination based on age" includes "retaliation based on the filing of an age discrimination complaint."  *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008).  The ADEA thus prohibits retaliation just as Title VII does, albeit not explicitly.  "To prove retaliation [under the ADEA], the plaintiff generally must establish that he or she suffered [1] a materially adverse action [2] because he or she had brought or threatened to bring a discrimination claim."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008).  The ADEA "requires proof that the prohibited criterion was the but-for cause of the prohibited conduct."  *Univ. of Tex. Southwestern*, 133 S. Ct. at 2523 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).  In other words, there is no mixed-motive retaliation under the ADEA just

as there is no mixed-motive retaliation under Title VII.  If the material adversity would still have been suffered absent the retaliatory motive, *i.e.* if it had more than one but-for cause, a retaliation claim under the ADEA will fail.

Finally, "ADEA[] retaliation claims based on circumstantial evidence" are subject to "the familiar burden-shifting framework of *McDonnell Douglas*."  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (citing *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004)).

### E.  Discrimination under the Equal Pay Act

The Equal Pay Act of 1963 (EPA) amended the Fair Labor Standards Act of 1938 (FLSA) to protect employees—including federal employees—from pay discrimination on the basis of sex.  *See* 29 U.S.C. § 206(d).[15]  Specifically, federal employers are prohibited from "paying wages to employees in [their agency] at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex," provided that the work "requires equal skill, effort, and responsibility" and is "performed under similar working conditions."  *Id.*  Exceptions are provided for: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  *Id.*

### F.  Retaliation for Bringing an Equal Pay Act Claim

The EPA itself does not prohibit retaliation against employees for filing claims. However, Section 15(a)(3) of the FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  *See* 29 U.S.C.

---

[15] Equal Pay Act of 1963, Pub. L. 88-38, § 3, 77 Stat. 56, 56-57.

§ 215(a)(3).  That chapter, as amended, includes the EPA's prohibition on gender-based wage discrimination.  An EPA claimant who suffers retaliation may therefore seek relief under the FLSA's anti-retaliation provisions.

Courts essentially equate the elements of retaliation under the FLSA with those under Title VII.  *Benton v. Laborers' Joint Training Fund*, No. CV 14-1073, 2015 WL 4736028, at *8 n.9 (D.D.C. Aug. 10, 2015) ("Because the elements of a prima facie case of retaliation are essentially identical under the FLSA and Title VII, . . . Title VII case law is instructive here.") (quoting *Cooke v. Rosenker*, 601 F. Supp. 2d 64, 73 (D.D.C. 2009)).  To establish a retaliation claim under the FLSA, "a plaintiff is required to show that (1) he made an FLSA complaint or otherwise engaged in protected conduct; (2) the defendant was aware that he had engaged in protected activity; (3) the defendant took an action that was materially adverse to the complainant and sufficient to dissuade a reasonable employee from further protected activity; and that (4) there was a causal relationship between the two."  *Del Villar v. Flynn Architectural Finishes, Inc.*, 893 F. Supp. 2d 201, 213 (D.D.C. 2012) (citing *Caryk v. Coupe*, 663 F. Supp. 1243, 1253 (D.D.C. 1987)).

Retaliation claims under the FLSA are subject—absent direct evidence—to the burden-shifting framework of *McDonnell Douglas*, described above.  *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013).

### G.  Administrative Exhaustion: the EEO Process and Timeliness

Federal employees must exhaust their administrative remedies before filing suit under Title VII or the ADEA.  *Koch v. Walter*, 935 F. Supp. 2d 164, 169 (D.D.C. 2013) (citing 29 U.S.C § 633a(b)-(d); 42 U.S.C. § 2000e-16(c); *Payne v. Salazar*, 619 F.3d 56, 58 (D.C. Cir. 2010)).  The same process applies to claims brought under Title VII, the ADEA, and the Equal

Pay Act.  29 C.F.R. § 1614.103(a).[16]  That process begins when the employee contacts an EEO

counselor, which must be done within 45 days of a discrete act that is allegedly discriminatory.

*Id.* § 1614.105(a)(1); *see also Woodruff v. Peters*, 482 F.3d 521, 527 (D.C. Cir. 2007).  If the

matter is not resolved through counseling, the employee must timely file an administrative

complaint with the agency.  29 C.F.R. § 1614.106(a)-(c).  After the agency has the opportunity to

investigate the matter, the complainant may demand an immediate final decision from the agency

or a hearing before an EEOC administrative judge.  *Id.* §§ 1614.106(e)(2), 1614.108(f).  A

complainant may file a civil action within 90 days of receipt of the final decision from the

agency or at any time after a complaint has been pending for at least 180 days.  *Id.* § 1614.407.

Because untimely exhaustion of administrative remedies is an affirmative defense,

a defendant bears the burden of proof.  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir.

1997) (citing *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985)).

The administrative filing requirement applicable to federal employees "essentially

functions as a statute of limitations for Title VII actions."  *Carter v. Wash. Metro. Area Transit

Auth.*, 503 F.3d 143, 145 (D.C. Cir. 2007).  "Filing a timely charge of discrimination with the

EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a

statute of limitations, is subject to waiver, estoppel, and equitable tolling."  *Zipes v. Trans World

Airlines, Inc.*, 455 U.S. 385, 393 (1982).  "Exhaustion under Title VII, like other procedural

devices, should never be allowed to become so formidable a demand that it obscures the clear

congressional purpose of rooting out every vestige of employment discrimination within the

---

[16] Although the *process* applies to all three statutes, there is no administrative-exhaustion
requirement for violations of the Equal Pay Act, which may be brought in federal court under
Section 16(b) of the FLSA, 29 U.S.C. § 216(b), anytime within two years of the alleged
violation—or within three years if the violation was willful.  *Compare* 29 C.F.R. § 1614.407 *with
id.* § 1614.408.

federal government." *Brown*, 777 F.2d at 14 (quotation marks and alterations omitted). Thus, the requirement that a federal employee contact an EEO counselor within 45 days of a discriminatory act can be equitably tolled. *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008) (citing *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003)).[17]

   Administrative exhaustion applies differently to "continuing" violations than to "discrete" violations. *See generally Nat'l R.R. Corp. v. Morgan*, 536 U.S. 101 (2002).[18]  Under the continuing-violation doctrine articulated in *Morgan*, "if the alleged acts constitute one similar pattern or practice and at least one illegal act took place within the filing period, then the complaint of discrimination is not time-barred and acts outside the statutory period may be considered for purposes of liability." *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007) (quoting *Singletary v. Dist. of Columbia,* 351 F.3d 519, 526 (D.C. Cir. 2003)) (internal quotation marks and citation omitted).  The doctrine is subject to "two crucial limiting principles." *Mayers*, 478 F.3d at 368.  First, it does not apply to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" because "[e]ach incident of discrimination and each retaliatory adverse employment action constitutes a separate actionable 'unlawful employment practice.'" *Id.* (quoting *Morgan*, 536 U.S. at 114).  Second,

---

[17] Equitable tolling under Title VII for federal employees functions the same as it does in private lawsuits. *See Gantt v. Mabus*, 857 F. Supp. 2d 120, 128 (D.D.C. 2012) (citing *Zipes*, 455 U.S. at 393-94); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990)).  The invoking litigant bears the burden of establishing two elements: (1) that she has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in her way.  *Gantt*, 857 F. Supp. 2d at 128 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The doctrine is to be "exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988).

[18] A hostile work environment is a species of continuing violation. *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009) ("The classic example of a continuing violation is a hostile work environment[.]") (citing *Morgan*, 536 U.S. at 117); *accord Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007); *Singletary v. District of Columbia*, 351 F.3d 519, 526-27 & n.8 (D.C. Cir. 2003).

the plaintiff alleging a continuing violation must "must allege that at least one 'act contributing

to the claim occur[red] within the filing period.'" *Mayers*, 478 F.3d at 368 (quoting *Morgan*,

536 U.S. at 117).

### F.  Failure to State a Claim

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the

adequacy of a complaint on its face.  Fed. R. Civ. P. 12(b)(6).  A complaint must be sufficient

"to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Although a

complaint does not need detailed factual allegations, a plaintiff's obligation to provide the

grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Id.*  A court must treat the

complaint's factual allegations as true, "even if doubtful in fact," *id.*, but a court need not accept

as true legal conclusions set forth in a complaint, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to state a claim for relief that is "plausible on its face."  *Twombly*, 550 U.S. at 570.  A

complaint must allege sufficient facts that would allow the court "to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678-79.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged

in the complaint, documents attached to the complaint as exhibits or incorporated by reference,

and matters about which the court may take judicial notice.  *Abhe & Svoboda, Inc. v. Chao*, 508

F.3d 1052, 1059 (D.C. Cir. 2007).  If, in considering a Rule 12(b)(6) motion, "matters outside the

pleading are presented to and not excluded by the court, the motion shall be treated as one for

summary judgment and disposed of as provided in Rule 56[.]"  *Holy Land Found. For Relief &*

*Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003).  Where matters outside the pleadings are presented in a motion to dismiss, the court must treat the motion as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).

## III.  ANALYSIS

The bulk of the Secretary's motion is aimed at Ms. Guerrero's failure to follow the administrative process outlined above.  The Secretary argues that nine of Ms. Guerrero's present claims were never mentioned to an EEO counselor.  Relatedly, the Secretary argues that eight other claims are "not encompassed within, or closely related to," the issues accepted for investigation by the USDA.  Mot. at 11.  In the alternative, the Secretary argues that five of Ms. Guerrero's allegations fail to state a claim upon which relief can be granted.  Finally, the Secretary argues that the Second Administrative Complaint was never exhausted because Ms. Guerrero withdrew her request for a hearing and filed the instant lawsuit.

### A.  Failure to Exhaust the Second Administrative Complaint

Although made last, the Court will address first the Secretary's argument that Ms. Guerrero's Second Administrative Complaint was not exhausted.  The Secretary relies principally on *Wiley v. Johnson*, 436 F. Supp. 2d 91 (D.D.C. 2006).  The *Wiley* plaintiff filed his EEOC complaint on April 26, 2001 and requested a hearing on February 21, 2002.  He withdrew his request for a hearing on January 7, 2003.  This Court held that "[a] voluntary dismissal cannot be used to circumvent the requirement of exhaustion."  *Id.* at 95.  A contrary result would "undermine the purposes behind the exhaustion doctrine," namely, "the process of narrowing the issues."  *Id.*

But as the Secretary concedes in a footnote, Ms. Guerrero did not actually withdraw or dismiss her EEOC complaint.  The Secretary confuses "effect" with "fact":

> Thus, *in effect*, plaintiff voluntarily dismissed her EEOC case before the hearing could take place. . . .  *In fact*, plaintiff did not file a motion to withdraw her request for a hearing or to dismiss her administrative complaint.  Therefore, her request for a hearing technically remains pending . . . .

Mot. at 14 & n.1 (emphasis added).  Because Ms. Guerrero never withdrew her EEOC complaint, *Wiley* is inapposite.  Not only has Ms. Guerrero done nothing to prevent her Second Administrative Complaint from being exhausted, it is *the Secretary* who now "intends to move to dismiss her [EEOC] complaint in light of this lawsuit."  *Id.* at 14 n.1.  The Secretary thus asks the Court to dismiss certain of Ms. Guerrero's claims at the same time that he asks the EEOC to dismiss the same claims.  The Court will deny the Secretary's motion in this respect.

### B.  Failure to Contact an EEO Counselor Within 45 Days

The Secretary moves to dismiss Ms. Guerrero's allegations arising from her time in the Office of Civil Rights, because she failed to contact an EEO counselor within 45 days of the alleged discriminatory treatment.  *See* Mot. at 8-10 (citing 29 C.F.R. § 1614.05).  The Secretary assails nine of Ms. Guerrero's allegations as untimely in this regard:

1. That she was referred to as an intern and . . . relegated to secretarial duties with undesirable assignments.  (Am. Compl. ¶¶ 23, 25, 32)

2. That her skin was touched by Ms. Rottenberg and Mr. Sait, and that she was asked if she was a Negro.  (*Id.* ¶ 29)

3. That her assignments were removed, and that she became the subject of open discussions meant to humiliate her.  (*Id.* ¶ 29)

4. That she received a performance appraisal in 2011 that stated: "Plaintiff would be well served if she should keep silent [sic] what happened in Civil Rights."  (*Id.* ¶ 29)

5. That she was told "to go someplace else if you want an opportunity."  (*Id.* ¶ 30)

6. That she was denied an opportunity to take leadership courses.

(*Id.* ¶ 37)

7. That she was made to clean out a storage room filled with hazardous materials.  (*Id.* ¶ 15)

8. That she was told "she would be well served if she remained silent about her poor treatment."  (*Id.* ¶ 16)

9. That she [was paid] less that two younger, white males working on the Administration Solutions Project.  (*Id.* ¶ 28)

Mot. at 8-10.  The Secretary argues that the first allegation on this list took place in 2011, "at least a year before plaintiff contacted an EEO counselor" in October 2012.  *Id.* at 8.  Citing Ms. Guerrero's First and Second EEO Complaints, the Secretary argues that allegations 2-8 are not mentioned in either.  *Id.* at 8-10.  Regarding Ms. Guerrero's complaint about disparate pay (the ninth allegation), the Secretary argues that Ms. Guerrero should have made this claim in her First EEO Complaint, and was untimely in waiting to bring it in her Second EEO Complaint more than a year later.  *Id.* at 9-10.

Ms. Guerrero responds that there is "a genuine issue of material fact" as to whether the actions alleged in her First EEO Complaint and First Administrative Complaint "are discreet acts or ongoing harassment."  Opp'n at 8.[19]  If the latter, she argues further that there is a genuine dispute as to whether she has pleaded a "hostile work environment" as defined by *Morgan*, 536 U.S. at 115-21.  Without the benefit of a record made through discovery, the Court agrees with Ms. Guerrero.  *See Morgan*, 536 U.S. at 116 ("In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances.'") (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The Court does not yet have all "all the

---

[19] Because of a scrivener's error, the Opposition skips from page 10 to page 13.  To avoid confusion, the Court will cite to the pagination that is generated by the Electronic Case Filing (ECF) system.

circumstances," and thus cannot begin to undertake the inquiry prescribed by *Morgan*.  With

every inference drawn in her favor, Ms. Guerrero complained of an actionable, continuing

violation under Title VII.  *See* First Admin. Compl. at 5-8 (setting forth pages of allegations

under the header: "Why I Was Afraid of Returning to USDA FSIS IM – *Continual*

*Harrassment/Discrimination*.") (emphasis added).

        Other courts in this district have likewise refrained from deciding, based on an

EEO complaint alone, whether alleged violations are discrete or continuing.  *See, e.g.*, *Nat'l Fair*

*Hous. Alliance, Inc. v. Prudential Ins. Co. of Am.*, 219 F. Supp. 2d 104, 105 (D.D.C. 2002) ("At

this stage in the proceedings, individual plaintiffs have adequately pled the existence of

continuing violations.  The Court will entertain any challenges by defendants to the viability of

the continuing violations doctrine for purposes of the statute of limitations after the development

of a factual record.").  In *Bell v. Gonzales*, a plaintiff with disabilities alleged that, over a number

of years, his supervisors treated him less favorably than his non-disabled peers.  398 F. Supp. 2d

78, 84 (D.D.C. 2005).  The plaintiff did not file timely EEOC complaints related to this conduct,

but did file a timely complaint regarding an undesired lateral transfer that he alleged was

discriminatory.  *Id.* at 85.[20]  The *Bell* court noted plaintiff's contention that a series of events

"collectively rose to the level of a hostile work environment" so that the "entire period of the

hostile environment may be considered by a court for the purposes of determining liability."  *Id.*

at 85.  The court observed that the allegations in district court were based substantially on the

same conduct alleged in the plaintiff's administrative complaint.  *Id.*  ("Accordingly, the Court

grants defendants' motion to dismiss the claims alleging discrete acts of discrimination as

---

[20] The same 45-day time limit applies to federal employees with Rehabilitation Act claims, as in
*Bell*, 398 F. Supp. 2d at 84-91.

violations of law . . . and denies the motion to the extent it seeks to dismiss plaintiff's hostile

work environment claim."). The Secretary's exhaustion argument in this case will similarly be

denied as to the claim of a hostile work environment.

"The *Morgan* principle is not, however, an open sesame to recovery for time-

barred violations." *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011). That is because

"incidents barred by the statute of limitations and ones not barred can qualify as 'part of the same

actionable hostile environment claim' only if they are adequately linked into a coherent hostile

environment claim—if, for example, they 'involve[ ] the same type of employment actions,

occur[] relatively frequently, and [are] perpetrated by the same managers.'" *Id.* (quoting

*Morgan*, 536 U.S. at 120–21). Whether Ms. Guerrero's claims are "adequately linked" and thus

constitute a continuing violation is a question that must be resolved with the benefit of a

developed record. Nevertheless, the Court will rule at this juncture that the un-exhausted

claims—the first eight listed above—are not separately actionable because they were not brought

to an EEO Counselor within 45 days of their occurring.

Ms. Guerrero's pay discrimination claim—ninth on the list above—is timely and

thus separately actionable.[21] Title VII now provides that a discriminatory compensation practice

occurs "each time wages, benefits, or other compensation is paid, resulting in whole or in part

from such a decision or other practice." 42 U.S.C. § 2000e-5(e)(3)(A). Although the Secretary

would define Ms. Guerrero's unequal paychecks as those she received "while working on the

Administrative Solutions Project," Mot. at 10, her complaint is that her unequal pay in 2012

persisted in, and may have led to, continuing unequal pay in 2013 when she was reassigned to

---

[21] Ms. Guerrero alleges that she was paid less than two "young white employees." Am. Compl.
¶ 28. Because she does not state a gender-based claim, the Equal Pay Act does not apply and
Ms. Guerrero must have exhausted the administrative process under Title VII.

LERD.  Am. Compl. ¶¶ 28, 34.  Indeed, the nature of the government pay and promotion system is such that Ms. Guerrero's non-promotion while on detail may well affect her compensation to this day.  It cannot be said on this very limited record that Ms. Guerrero's pay discrimination claim was untimely, inasmuch as the allegedly unlawful employment practice continued to "occur."  *See* 42 U.S.C. § 2000e-5(e); 26 U.S.C. § 2656(d).

### C.  Allegations Not Accepted by USDA

The next class of allegations challenged by the Secretary includes those brought to an EEO counselor's attention but not accepted by USDA for investigation.  The Secretary argues that "plaintiff has failed to exhaust administrative remedies for any act not encompassed within, or closely related to, the[] four investigated issues" identified in the USDA's two acceptance letters. Mot. at 11.  He identifies eight such allegations by Ms. Guerrero:

1.  That she was denied a job as a GS-14 Litigation Specialist.  (Am. Compl. ¶¶ 20, 33)

2.  That she was denied free training opportunities with the Office of Personnel Management.  (*Id.* ¶¶ 19, 37)

3.  That she was left off an agency telephone-call list.  (*Id.* ¶ 19)

4.  That she was questioned about taking time to vote.  (*Id.* ¶ 19)

5.  That she was questioned about taking sick leave to get a doctor's note.  (*Id.* ¶ 19)

6.  That she was denied access to office equipment.  (*Id.* ¶ 19)

7.  That she received no 2013 evaluation or bonus.  (*Id.* ¶¶ 33, 35)

8.  That FSIS assigned and seated Jackie Shamblin in LERD in order to intimidate her.  (*Id.* ¶ 38)

*Id.*

USDA accepted only one issue for investigation in its April 25, 2013 letter and only three issues in its June 16, 2014 letter.  Ms. Guerrero challenged USDA's characterizations

of her 2012 claims, both in a May 15, 2013 Letter, Dkt. 9-2 at 23, and at her September 18, 2014

Hearing, *see* Transcript, Dkt 9-5, at 1-9.  Although the Secretary does not differentiate between

Ms. Guerrero's First and Second Administrative Complaints, the distinction is ultimately

unimportant because the Court will not dismiss any claim on the ground that it was not accepted

for investigation by the USDA.[22]

The proper comparator is not the USDA's acceptance letters, but rather Ms.

Guerrero's EEO and Administrative Complaints.  Administrative exhaustion turns on the

plaintiff's efforts, not the agency's response.  Ms. Guerrero's detailed allegations (after

counseling, to be sure, but more than enough to suggest a hostile work environment) were

directed in large measure against the Office of Civil Rights, the very office responsible for

deciding what allegations to accept and investigate.  In these circumstances, Ms. Guerrero has

raised a sufficient question about the neutrality of the agency's acceptance process to warrant

discovery into her claims.

The Secretary's focus on the exclusivity of the acceptance letters is therefore

unavailing. Mot. at 3-4 (arguing that "the EEO Counselor Report focused exclusively on the

discrete reassignment, and it did not discuss any of the harassing acts that plaintiff now

characterizes as constituting a hostile work environment").  While the Secretary correctly reads

the First Acceptance Letter, he ignores Ms. Guerrero's subsequent challenges to it and the details

in her First Administrative Complaint.  She clearly *complained* about a course of alleged

mistreatment due to her color (Black), race (Hispanic) and age (52).  First Admin. Compl. at 2.

---

[22] Courts in this district have split over whether "a plaintiff's 'failure to respond to the [agency's] framing of the issue supports a finding that a plaintiff has failed to exhaust his administrative remedies with respect to those claims.'"  *See Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 65 (D.D.C. 2015) (quoting *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 68 (D.D.C. 2011) (internal citations and quotation omitted).

The EEO Counselor failed to address those allegations by Ms. Guerrero, which explained *why* she believed that a forced and sudden reassignment to LERD was discriminatory, a continuation of past discrimination, and a blow to her career.  It cannot be said that Ms. Guerrero failed to complain; the EEO Counselor reduced the scope of her complaints to the most immediate events and the Civil Rights Division narrowed the scope of the complaint even more.  *Compare* First Admin. Compl. *with* First Acceptance Letter *and* Second Admin. Complaint *with* Second Acceptance Letter.

　　　　　With the record before it, the Court will not dismiss any claim on the ground that the USDA did not accept certain of her claims for investigation.

### D.  Failure to State a Claim of Discrimination

　　　　　The Secretary also argues that Ms. Guerrero has not made out a *prima facie* case with respect to five of her claims.  First, the Secretary challenges any claim by Ms. Guerrero of race- or gender-based discrimination by comparison to Alexandra Sifuentes-Carnes, a Hispanic female.  *See* Mot. at 12; Am. Compl. ¶¶ 24-25.  Second, the Secretary explains that Ms. Guerrero was not selected for any Legal Specialist position because she did not have a signed performance appraisal for the first application and withdrew her fourth application.  *See* Mot. at 12-13; Am. Compl. ¶¶ 20, 33.  Third, the Secretary categorically assails allegations that younger or white supervisors were selected for positions for which Ms. Guerrero did not apply.  *See* Mot. at 13; Am. Compl. ¶ 27.  Fourth, the Secretary argues that Ms. Guerrero's discomfort at the relationship between Mr. Almanza and Ms. Rottenberg is not cognizable under Title VII.  *See* Mot. at 13-14; Am. Compl. ¶ 30.  Finally, the Secretary asks the Court to dismiss Ms. Guerrero's allegations that her supervisors continuously referred to her as an intern.  *See* Mot. at 14; Am. Compl. ¶ 31.

Ms. Guerrero alleges that she was discriminated or retaliated against because she is Hispanic, Black/African American, and aged 52.  Whether Ms. Sifuentes-Carnes was a comparable Hispanic female with similar assignments, so as to render Ms. Guerrero's EEO complaints meritless, is insufficiently addressed and cannot be decided on this foreshortened record:

> [A] plaintiff in a Title VII case is not required to show that she was disadvantaged in favor of a person outside of the protected class.  In other words, in order to make out a prima facie case, it is not necessary for an African-American plaintiff to show that she was disadvantaged by the employer's hiring of a Caucasian applicant, or for a female plaintiff to show that a male was hired in her stead. . . . The employer's hiring of a person of the same race or sex as the plaintiff might be relevant in assessing the merits of a plaintiff's claim beyond the stage of the prima facie case, but it is not a factor in the plaintiff's establishment of a prima facie case.

*Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1150 (D.C. Cir. 2004) (citation omitted).  Ms. Sifuentes-Carnes's apparent position in one of Ms. Guerrero's protected classes is thus relevant to, but not dispositive of, Ms. Guerrero's claims.  *Cf. id.* ("[E]ven if a plaintiff is replaced by someone within her class, she could still demonstrate that the employer treated her worse than others because she was a member of the protected class.").  Absent discovery into the circumstances, the Court will not dismiss this claim.

Other allegations similarly cannot be decided without a record.  The failure of Ms. Guerrero's managers to provide her with a signed performance appraisal is insignificant without context.  There may have been a legitimate reason, or the absence of an appraisal (and thus eligibility for promotion) may have been part of a continuing hostile environment that only ripened later.  Discovery will tell.  The persistent reference to Ms. Guerrero as an "intern" likewise will be illuminated by a factual record.

However, Ms. Guerrerro cannot complain about the selection of younger or white

persons for jobs for which she did not apply.  *See Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (identifying, as one of four elements to a failure-to-hire claim that the plaintiff "applied and was qualified for a job for which the employer was seeking applicants") (quoting *McDonnell Douglas*, 411 U.S. at 802).  *See also Singletary v. District of Columbia*, 351 F.3d 519, 524 (D.C. Cir. 2003) ("Where the alleged retaliation took the form of a failure to promote, as it did here, the plaintiff must also show that he applied for an available job and that he was qualified for that position.") (citing *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003)).  The Secretary's motion will be granted as to Paragraph 27 of the Amended Complaint.

The Court will also grant the Secretary's motion regarding Ms. Guerrero's discomfort at the alleged relationship between Mr. Almanza and Ms. Rottenberg.  Even if Ms. Rottenberg rubbed Mr. Almanza's shoulders, Am. Comp. ¶ 30**,** the act did not constitute an adverse employment action (discriminatory) nor was it materially adverse to Ms. Guerrero (retaliatory).  No amount of discovery could make it so.  *Cf. Mayers v. Laborers' Health & Safety Fund of N. Am.*, 404 F. Supp. 2d 59, 61-62 (D.D.C. 2005) (dismissing retaliation claim by plaintiff who felt "very uncomfortable" because her co-workers were acting as if she were not there), *aff'd* 478 F.3d 364 (D.C. Cir. 2007); *Singleton v. Potter*, 402 F. Supp. 2d 12, 43 (D.D.C. 2005) ("Indeed, []most of the instances cited by Plaintiff, while perhaps uncomfortable, do not rise to the level of adverse employment actions . . . .").

## V.  CONCLUSION

For the reasons stated, the Secretary's motion to dismiss will be granted in part and denied in part.  The following discrete acts alleged by Ms. Guerrero in her Amended Complaint are untimely, not individually actionable, and therefore will be dismissed:

1.  That she was referred to as an intern and . . . relegated to secretarial duties with undesirable assignments.  (Am. Compl. ¶¶ 23, 25, 32)

2.  That her skin was touched by Ms. Rottenberg and Mr. Sait, and that she was asked if she was a Negro.  (*Id.* ¶ 29)

3.  That her assignments were removed, and that she became the subject of open discussions meant to humiliate her.  (*Id.* ¶ 29)

4.  That she received a performance appraisal in 2011 that stated: "Plaintiff would be well served if she should keep silent [sic] what happened in Civil Rights."  (*Id.* ¶ 29)

5.  That she was told "to go someplace else if you want an opportunity."  (*Id.* ¶ 30)

6.  That she was denied an opportunity to take leadership courses. (*Id.* ¶ 37)

7.  That she was made to clean out a storage room filled with hazardous materials.  (*Id.* ¶ 15)

8.  That she was told "she would be well served if she remained silent about her poor treatment."  (*Id.* ¶ 16)

These allegations may nonetheless be relevant background evidence of Ms. Guerrero's claim of a hostile work environment.

Ms. Guerrero's claims that younger, white persons were selected to fill jobs for which Ms. Guerrero did not apply, Am. Compl. ¶ 27, and that she was "uncomfortable" because of the "close personal relationship" between Mr. Al Almanza and Ms. Carmen Rottenberg, *id.* ¶ 30, will be dismissed for failure to state a claim upon which relief can be granted.

In all other respects, the Secretary's Motion to Dismiss shall be denied.  A memorializing Order accompanies this Opinion.

Date: September 30, 2015

/s/
ROSEMARY M. COLLYER
United States District Judge